BEFORE THE SECOND DIVISION, MARCH 20, 1946

**No. 50952.**—Protest 99552–K of Oscar Krenz Copper & Brass Works, Inc. (San Francisco).

TILSON, Judge: This suit against the United States presents for determination the question of the proper classification of two condenser plates upon which the collector levied duty at the rate of 27½ percent ad valorem under paragraph 372, Tariff Act of 1930, as parts of machines, not specially provided for, plus 3 cents per pound under section 3425 of the Internal Revenue Code, as being in chief value of copper. The plaintiff claims said merchandise to be entitled to free entry under paragraph 1634 of the said act, as old brass, fit only for remanufacture, or free of duty under Public Law No. 497, T. D. 50585, which, so far as here pertinent, is as follows:

That no duties or import taxes shall be levied, collected, or payable under the Tariff Act of 1930, as amended, or under section 3425 of the Internal Revenue Code, with respect to scrap iron, scrap steel, as defined in paragraph 301 of the Tariff Act of 1930 (U. S. C., title 19, sec. 1001, par. 301), relaying and rerolling rails, or nonferrous-metal scrap entered for consumption or withdrawn from warehouse for consumption during the period beginning with the day following the date of the enactment of this Act and ending with the termination of the unlimited national emergency proclaimed by the President on May 27, 1941.

So far as here pertinent, section 3425 of the Internal Revenue Code reads as follows:

* * * All articles dutiable under the Tariff Act of 1930, not provided for heretofore in this section, in which copper (including copper in alloys) is the component material of chief value, 3 cents per pound.

At the trial of the case counsel for the plaintiff offered the testimony of one witness in San Francisco, to whom the imported merchandise was originally shipped. He testified that he had been in the business of manufacturing copper and brass for a period of 37 or 38 years; that nothing was done to the merchandise while it was in San Francisco; "It came in and was there perhaps 3 or 4 days and then shipped out again" to the Todd Seattle Drydock Co. at Seattle, and that it was not touched while it was in his possession; that the merchandise consisted of condenser heads.

As to the condition of the merchandise, the witness stated that it was worn-out condenser heads on which the threads were worn out and one of the tube sheets was cracked; that the merchandise was not sent to him to be made into new tubes or plates; that in their condition while at his place of business they were fit only to be used as patterns in order to get the shape of the new condenser plates; "These would only have been junk"; that they could not have been used for making new condenser plates.

The second witness to testify was a surveyor at Todd's Shipbuilding Yard for the War Shipping Administration. He stated that he remembered the merchandise being received at his place of business at Seattle, Wash., and that "Todd's had them made on the outside. They were cast here, and the old sheets were sent back for templates to make the new sheets from."

Q. Were the condenser plates, the ones that came from Krenz, at the time you saw them, suitable to be used for their original purpose?—A. Oh, no.
Q. Why not?—A. They were cracked and the threads were all gone.
Q. And in order to use tubes of that character for their purpose, they have to have good threads and can't be cracked?—A. That is right.
Q. Were they just junk?—A. Yes.

Upon this record counsel for the defendant contends that the plaintiff has failed to show that the merchandise is not parts of machines, not specially provided for; that it has failed to show that the merchandise is scrap; and that it has completely failed to sustain the burden of proof incumbent upon it in order to overcome the presumption of correctness attaching to the collector's classification. We are unable to agree with counsel in any of his contentions.

In *Bath Iron Works* v. *United States*, T. D. 38235 (G. A. 8313), in passing upon the proper classification of steel bedplates, with cracks, this court observed:

\* \* \* When, through inherent defects, a casting is rendered completely useless for the purpose for which it was specially constructed and designed, and can be made use of only through remanufacture, such a casting is nothing but scrap iron or steel, as the case may be.

It is true that the imported merchandise was used for the purpose of getting the shape or as guides in producing new condensers but that was not the purpose for which it had been originally designed and constructed. This merchandise was designed and constructed originally to condense steam, and it might well be assumed that if it were capable of performing this function, there would have been no occasion for replacing it with new merchandise. It is made entirely clear from the record that the imported merchandise had, prior to importation, become completely useless for the purpose for which it was originally designed and constructed, and could be made use of only through remanufacture. This places the merchandise well within the definition of "scrap" from Webster's New International Dictionary, 1943 Edition, quoted in defendant's brief, as follows:

Scrap. adj. 2. Used and discarded, or in such condition as to be unfit for further use; secondary; as, *scrap iron.*

A reading of this record is convincing that the imported merchandise was used and discarded, that it was in such condition as to be unfit for further use, and that it was secondary.

It is to be remembered that the collector classified and assessed duty upon this merchandise under section 3425, Internal Revenue Code, as being in chief value of copper. The record is not sufficient to overcome the presumption of correctness attaching to the classification of the merchandise as being in chief value of copper. Since paragraph 1634, Tariff Act of 1930, provides only for merchandise the component material of which is brass or Dutch metal, and since it is shown that the instant merchandise is composed in chief value of copper, it is clear that plaintiff's claim under said paragraph 1634 must be, and is hereby, overruled.

The merchandise in question is scrap. It is composed of a nonferrous metal, to wit, copper. It was entered during the effective date of Public Law No. 497, which provides that no duties or import taxes shall be levied, collected, or payable under the Tariff Act of 1930, as amended, or under section 3425, Internal Revenue Code, upon nonferrous metal scrap during the effective date of said act.

For the reasons stated, we hold the merchandise covered by this suit to be free of import duties and internal revenue taxes under Public Law No. 497, as alleged by the plaintiff.

Judgment will be rendered accordingly.